# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINA MARTINEZ PERALES,<br><br>Plaintiff,<br><br>v.<br><br>NANCY BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 1:17-cv-01353 – JLT<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF EVANGELINA MARTINEZ PERALES AND AGAINST DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Evangelina Martinez Perales asserts she is entitled to a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff contends the administrative law judge erred in evaluating the record and seeks judicial review of the decision to deny her applications for benefits. Because the ALJ failed to apply the proper legal standards in evaluating the credibility of Plaintiff's subjective complaints, Defendant's motion for summary judgment (Doc. 26) is **DENIED** and the administrative decision is **REMANDED** for further proceedings.

## PROCEDURAL HISTORY

Plaintiff filed her application for benefits in January 2013, alleging disability beginning on March 24, 2012. (Doc. 11-6 at 2) The Social Security Administration denied the applications at both the initial level and upon reconsideration. (*See generally* Doc. 11-4; Doc. 11-3 at 23) After requesting

1

a hearing, Plaintiff testified before an ALJ on January 8, 2016. (Doc. 11-3 at 23, 39) The ALJ determined Plaintiff was not disabled as defined by the Social Security Act and issued an order denying benefits on April 26, 2016. (*Id.* at 23- 32) When the Appeals Council denied Plaintiff's request for review on June 14, 2016 (*id.* at 2-4), the ALJ's findings became the final decision of the Commissioner of Social Security ("Commissioner").

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v.*

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

### A.     Medical Background[1]

Dr. Samuel Hinton performed a consultative ophthalmological examination on June 20, 2013. (Doc. 11-15 at 22) Plaintiff reported she had "blurry vision," which started about two months before. (*Id.* at 25) She told Dr. Hinton that her near and far vision was affected and was limiting her ability to read. (*Id.* at 25) Dr. Hinton diagnosed Plaintiff with proliferative diabetic retinopathy in both eyes and amblyopia in her left eye. (*Id.* at 23, 29) Dr. Hinton opined Plaintiff's uncorrected vision in her left eye was 20/800 and 20/25 in her right eye. (*Id.* at 2) He also determined Plaintiff's best possible corrected vision was 20/200 in the left eye and 20/20 in the right eye. (*Id.*)

Dr. Mohinder Poonia also performed an internal medicine consultative examination of Plaintiff on June 20, 2013. (Doc. 11-15 at 33) He noted Plaintiff's medical history included placement of prosthetic valve in her heart; "a stroke with left hemiparesis;" and diabetes mellitus, type II. (*Id.*) Dr. Poonia also indicated Plaintiff had "a loss of vision because of retinal hemorrhage possibility due to diabetes mellitus" and she was "totally blind [in] the left eye." (*Id.* at 35) Plaintiff told Dr. Poonia that she had "shortness of breath and fatigue [with a] mild degree of exertion." (*Id.*) Dr. Poonia observed

---

[1] Although the Court has reviewed the entire record, this summary is provided merely as a background for Plaintiff's subjective complaints., because Plaintiff does not challenge the ALJ's evaluation of the medical record.

3

Plaintiff had "difficulty in walking," with "a slightly limping gait." (*Id.*) Dr. Poonia determined Plaintiff's deep tendon reflexes were "3-4 plus," and she had "mild weakness of the left arm and leg … due to stroke." (*Id.* at 34) According to Dr. Poonia, Plaintiff had a normal range of motion in her back, hips, knees, ankle joints, and shoulder joints. (*Id.*)

On June 28, 2013, Plaintiff had a psychological evaluation performed by Dr. Elke Kurpiers. (Doc. 11-15 at 38) Plaintiff told Dr. Kurpiers that she saw therapist for treatment of "stress and depression a few years [before]," and her primary care physician prescribed Lexapro. (*Id.*) She stated that "Lexapro helped her to focus better," but she was not currently taking it or any other antidepressant. (*Id.* at 39) Dr. Kurpiers observed that Plaintiff's "affect was flat" and "[h]er mood was dysphoric and labile during the interview, when she broke into tears several times." (*Id.*) However, Plaintiff's "mood improved during [the] cognitive assessment, when the focus turned away from her problems." (*Id.*) Dr. Kurpriers diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, moderate, without psychotic features" and "Cognitive Disorder NOS, mild to moderate." (*Id.* at 42) Dr. Kurpiers administered the Wechsler Adult Intelligence Scale (WAIS-4) and Wechsler Memory Scale (WMS-4), and found Plaintiff had "no difficulty understanding and following test instructions." (*Id.* at 40) On the WAIS-4, Dr. Kurpiers found Plaintiff's scores were "within the normal range," though she believed Plaintiff's nonverbal skills may have decreased due to "a right hemispheric stroke." (*Id.*) Dr. Kurpiers noted Plaintiff "scored in the Above Average range on Auditory, Visual, Immediate and Delayed Memory" with the WMS-4. (*Id.* at 42) She opined Plaintiff had "the ability to understand, carryout and remember simple instructions." (*Id.* at 43) Dr. Kurpiers believed Plaintiff's "ability to respond appropriately to coworkers, supervisors and the public [was] moderately impaired … due to depression and low self confidence in her abilities." (*Id.*) She also concluded Plaintiff had "difficulty coping," "would not withstand emotional pressure," and "would have mild to moderate difficulties with changes in a routine work setting." (*Id.*)

On February 24, 2014, Dr. David Kaye completed a "summary of vision findings." (Doc. 11-15 at 46) He diagnosed Plaintiff with diabetic retinopathy and macular degeneration. (*Id.*)

Dr. Mary Lewis performed a comprehensive psychiatric evaluation on February 21, 2014. (Doc. 11-15 at 50) Dr. Lewis opined Plaintiff's mood was euthymic and her affect was "appropriate

for the topics of discussion." (*Id.* at 52) She determined Plaintiff's "[r]ecent memory recall [was] satisfactory based upon … [her] ability to successfully recall … three items after five minutes." (*Id.* at 53) In addition, Dr. Lewis found Plaintiff's "capability for simultaneous and sequential processing, attention encoding and nonverbal reasoning/abstraction, as measured by … [her] performance on digit span and simple arithmetic, memory recall, concentration and explanation of a proverb [was] not significantly impaired." (*Id.*) According to Dr. Lewis, Plaintiff "did not exhibit symptoms consistent with a major mental disorder." (*Id.* at 54) Dr. Lewis concluded Plaintiff appeared "able to function adequately" and was "not significantly impaired" with her ability to understand and remember very short or detailed instructions, maintain attention and concentration, sustain an ordinary routine, interact with others, and deal with changes in the workplace. (*Id.*)

On February 24, 2014, Dr. Tomas Rios performed a comprehensive internal medicine evaluation. (Doc. 11-15 at 57) Plaintiff told Dr. Rios she had "been able to walk without any assistive device for about a year," but she continued to have "some difficulty maintaining her balance," especially when tired. (*Id.*) She stated also that, due to diabetes, she had problems with her eyesight and "a burning sensation and numbness to both feet," which "affected her equilibrium and balance." (*Id.*) Dr. Rios observed Plaintiff had "difficult with tandem gait," which he attributed to diabetic neuropathy and stroke. (*Id.* at 59) He found Plaintiff had "some slight motor strength loss on the left lower extremity at 4+/5 as compared to the right that [was] 5/5." (*Id.* at 60) Dr. Rios determined her muscle strength and grip strength were 5/5. (*Id.*) He opined Plaintiff could stand and walk "[u]p to six hours;" sit without limitation; and lift/carry 20 pounds occasionally and 10 pounds frequently. (*Id.* at 61) Dr. Rios indicated Plaintiff could occasionally balance and frequently climb, stoop, kneel, crouch, and crawl. (*Id.*) Furthermore, he identified limitations with reaching, handling, fingering, and feeling—finding Plaintiff was limited on a frequent basis on the right side and an occasional basis on the left side. (*Id.*) Dr. Rios concluded Plaintiff "should be precluded [from] working at heights and around heavy machinery on account of her diabetic neuropathy and stroke." (*Id.*)

**B.      Function Report**

Plaintiff completed a function report in connection with her applications on March 28, 2013. (Doc. 11-7 at 24-32) She reported she had a "loss of hearing which [made] it hard to talk on the phone

or carry on a conversation." (*Id.* at 24) She explained she could not "handle a lot of the hustle or bustle of a busy office or work space," and it was "harder for [her] to focus on things." (*Id.*) Plaintiff believed she was "not able to handle stress easily." (*Id.*)

She reported that on a typical day, she took medication in the morning and had breakfast. (Doc. 11-7 at 25) She indicated that if the weather was not cold, she would go out for a little while. (*Id.*) Plaintiff said her time was spent sitting in a "comfy chair," watching television, taking a nap, lying down, and having the "usual meals." (*Id.*) Plaintiff reported she was no longer able to stand or sit "for long periods of time, walk freely, do [her] own cooking, laundry" or clean. (*Id.*) She stated she did not prepare meals because she was "afraid of cutting or burning" herself. (*Id.* at 26) She noted her chores were limited to washing "a few dishes" and folding laundry, which she did not do "very often." (*Id.*)

Plaintiff explained her left leg was "still week" and her balance was "not good and a fall hazard." (Doc. 11-7 at 27) She noted she would "take short walks," but did not have "appropriate foot wear to go for long walks" and callouses on her feet caused discomfort. (*Id.*) Plaintiff also indicated she did not go out alone because she was "afraid of being disoriented" and she "need[ed] some help getting out of [a] vehicle." (*Id.*) She noted that she went shopping "every 2-3 months," which took her "30 min. to an hour." (*Id.* at 27) Plaintiff indicated she also attended church "most Sundays, and Kiwanis meetings once or twice a month." (*Id.* at 28)

She indicated she was "[n]ot able to lift more than 8-10 lb." (Doc. 11-7 at 29) Plaintiff stated she could walk for "20-30 minutes" before she would "need to rest for about 5-1 minutes." (*Id.*) She indicated she could not pay attention for "more than 1-1.5 hours" at a time, and she did not finish things that she started, such as chores, reading, or watching a movie. (*Id.*) Plaintiff believed she could "follow directions if it does not involve many steps." (*Id.*)

**C.  Administrative Hearing Testimony**

On January 8, 2016, Plaintiff testified before an ALJ. (Doc. 11-3 at 23) Plaintiff estimated that she could walk for at least 20 minutes without difficulty "at a steady pace," but stated if she walked too fast, then she could fall. (*Id.* at 65) She stated she had a walker and a cane, but she found them "cumbersome to use" due to her hands and diabetes. (*Id.*)

She stated that she lived with family members who were "overprotective" and did not allow

her to do any cooking or yardwork. (Doc. 11-3 at 62, 70-71) Plaintiff said she could make meals if they were "not complicated" and did not "involve a lot of chopping" or a "lot of time at the stove or standing." (*Id.* at 71)

Plaintiff said that each day she would watch TV with her niece, but only "for a little while" because she was unable to "focus on something too long of a period." (Doc. 11-3 at 72) She explained she no longer watched movies because she would not finish it. (*Id.*) Plaintiff said she used to read, but she was unable to finish a book due to problems focusing. (*Id.* at 73)

### D. The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of March 24, 2012. (Doc. 11-3 at 25) At step two, the ALJ found Plaintiff's severe impairments included: "vegetation on the left ventricle; obesity; degenerative disc disease of the lumbar spine; stroke; degenerative joint disease of the left knee; strabismus; [and] amblyopia of the left eye." (*Id.*) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.* at 25-27) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as described in 20 CFR 404.1567(b) and 416.967(b)[2] except she is limited to occasional climbing, balancing, [kneeling], crouching, and crawling, occasional reach with the non-dominant (left) upper extremity, frequent handling and fingering with the non-dominant (left) upper extremity, and no exposure to unprotected heights.

(*Id.* at 27) Based upon this RFC, the ALJ concluded Plaintiff was "capable of performing past relevant work as a Property Manager." (*Id.* at 31) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 31-32)

## DISCUSSION AND ANALYSIS

The Plaintiff asserts the ALJ did not identify legally sufficient reasons to reject her credibility. (Doc. 21 at 6-11) Defendant argues the ALJ's decision should be affirmed because "there was no error in the ALJ's evaluation of her subjective testimony." (Doc. 26 at 8)

///

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

**A.   ALJ's Credibility Analysis**

In evaluating credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

Factors that may be considered by an ALJ in assessing a claimant's credibility include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (the ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities when weighing the claimant's credibility).

The ALJ summarized the Plaintiff's statements concerning her impairments and limitations, and addressed the credibility of these complaints by stating:

> At the hearing, the claimant testified that she is disabled due to right side hearing loss, a left lazy eye, a heart condition, excess body weight, and back and knee problems. She reported that she lives with her family, does limited housework and makes simple meals. She stated that she goes to church and socializes with her family. In her function report, the claimant observed that she cannot stand or sit for long periods and has trouble balancing and walking on uneven surfaces, but reported no problems completing person care activities and can wash dishes and fold laundry (4E/2-4) She noted that she goes to church on Sundays and attends Kiwanis meetings (4E/5) She observed that she can pay attention for 60-90 minutes and can generally follow instruction (4E/6)….
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements and those of her sister and niece concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

8

(Doc. 11-3 at 28-29) The ALJ then summarized the medical record related to Plaintiff's impairments. (*See id.* at 29-30) Plaintiff argues these findings related to her subjective complaints are not sufficient, and that "the ALJ made no specific findings regarding Plaintiff's credibility." (Doc. 21 at 7)

1. <u>Use of boilerplate language</u>

Significantly, the ALJ's finding that "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible…" has been criticized by courts— including the Ninth Circuit— as "boilerplate language." *See Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017) (citing *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012)). The Ninth Circuit found "this boilerplate language is problematic," and "subverts the way an RFC must be determined relying on credible evidence, including testimony." *Id.* As a result, the Ninth Circuit determined "inclusion of [the] flawed boilerplate language" "does not …add anything to the ALJ's determination." *Id.* Because the ALJ here only included the boilerplate language in addressing the statements of Plaintiff and did not specifically identify "the reasons explained in the decision," her credibility analysis was flawed.

2. <u>Summary of the medical record</u>

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999). However, as the Ninth Circuit explained, "summariz[ing] the medical evidence supporting [the] RFC determination... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to ... ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). As a result, "the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 U.S. Dist. LEXIS 102007 at *44 (E.D. Cal. Aug. 3, 2016).

Although Defendant identifies reasons for rejecting Plaintiff's credibility based upon the ALJ's summary of the medical records (*see* Doc. 26 at 5-9), these reasons were not clearly identified by the ALJ to support the adverse credibility determination. Importantly, the Court is "constrained to *review* the reasons the *ALJ* asserts." *Brown-Hunter*, 806 F.3d at 494 (emphasis in original) (quoting *Connett v.*

*Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)); *Bray v. Comm'r*, 554 F.3d 1219, 1229 (9th Cir. 2009) (the Court cannot engage in "*post hoc* rationalizations that attempt to intuit what the [ALJ] might have been thinking"). In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F. 3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible, and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494. Likewise, here, the ALJ offered little more than a summary of the medical evidence and boilerplate language to support her rejection Plaintiff's credibility.[3]

### 3. Failure to identify the testimony being discounted

Finally, as Plaintiff notes, "the ALJ must identify what testimony is not credible." (Doc. 21 at 7) (citing *Burch v. Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005). "General findings," such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted). The Ninth Circuit requires an ALJ to "**specifically identify what testimony is credible** and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints"). Because the ALJ did not carry this burden, the Court finds the ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

---

[3] Significantly, the Ninth Circuit determined that a claimant's "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("lack of medical evidence cannot form the sole basis for discounting pain testimony").

10

## B. Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the testimony can be credited as true, and remand is not appropriate. *Lester*, 81 F.3d at 834.

Importantly, courts retain flexibility in crediting testimony as true, and a remand for further proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Because the findings of the ALJ are insufficient to determine whether Plaintiff's statements should be credited as true, the matter should be remanded for the ALJ to re-evaluate the evidence.

## CONCLUSION AND ORDER

As set forth above, the ALJ failed to articulate clear and convincing reasons supported by substantial evidence in the record to reject Plaintiff's subjective complaints. As a result, the Court should not uphold the administrative decision. *See Sanchez*, 812 F.2d at 510.

Accordingly, the Court **ORDERS**:

1. Defendant's motion for summary judgment (Doc. 26) is **DENIED**;
2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Evangelina Martinez Perales and against Defendant, Nancy Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 1, 2019**  /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE